COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO.
2-02-207-CV
 
CITY OF FORT WORTH                                                            APPELLANT
V.
CYNTHIA DEOREO                                                              
    
APPELLEE
------------
FROM THE 271
ST
DISTRICT COURT OF WISE COUNTY
------------
OPINION
------------
I.
INTRODUCTION
Appellant, the City of Fort Worth,
appeals the trial court's judgment for Appellee, Cynthia DeOreo, on her claims
for violations of the Texas Whistleblower Act (Act). In eleven issues, Appellant
complains that: 1) Appellee failed to state a claim under the Act; 2) even if a
claim was stated under the Act, the evidence was legally and factually
insufficient to prove the elements of a whistleblower cause of action; and 3)
the evidence was legally and factually insufficient to support the compensatory
damages award. We affirm the trial court's judgment.
II. FACTS
Appellee was employed by Appellant as a
police officer from March 1992 until June 2000. In May of 1996, Appellee
reported her ex-husband and fellow police officer, Tim Harkrider, to the Fort
Worth Police Department for aggravated kidnapping.
Appellant discharged Harkrider when he pled guilty to felony false imprisonment.
While Harkrider worked as a police officer, he and deputy chief of police Ralph
Mendoza were friends. In August of 1999, Mendoza was appointed to chief of
police for Appellant.
Appellee alleged that after Mendoza
became chief of police, seven separate instances of retaliation occurred against
her for reporting Harkrider's illegal conduct. After the seventh alleged
retaliation event, Appellee resigned from the police department. Appellee then
filed suit on August 11, 2000 claiming constructive discharge in violation of
the Act, sexual harassment in violation of section 21.051 of the Texas Labor
Code, and retaliation for opposing unlawful sex discrimination in violation of
section 21.055 of the Texas Labor Code. Appellant moved for a summary judgment
motion on Appellee's claims. The trial court granted the summary judgment in
part, and Appellee proceeded to trial solely on her whistleblower claim.
Appellee's claim was tried to the bench, and the trial court found in favor of
Appellee on that claim. The trial court then awarded Appellee nearly $100,000 in
damages against Appellant. The trial court further ordered Appellant to
reinstate Appellee to a position comparable to that which she held on the day
she was constructively discharged.
III. TEXAS WHISTLEBLOWER
ACT
Appellant alleges that Appellee failed to
prove a claim under the Texas Whistleblower Act. Appellant states that Appellee
had the burden of proving four elements under the Act: 1) a report of a
violation of law; 2) made in good faith; 3) to an appropriate law enforcement
authority; and 4) that a suspension, termination, or other adverse personnel
action resulted from that report. Tex. Gov't Code Ann. § 554.002(a) (Vernon
2003). Appellant claims that Appellee: 1) failed to report a violation of law
contemplated by the Act to an appropriate law enforcement authority; 2) failed
to possess a good-faith belief that she had reported violations of law; and 3)
failed to prove her reports caused an adverse personnel action or a constructive
discharge.
Failure To State A Claim
In Appellant's first issue on appeal,
Appellant states that the evidence is both legally and factually insufficient to
support the finding that Appellee reported in good faith to an appropriate law
enforcement entity violations of law by a public official. Appellant states that
Appellee never made a report that was protected under the Act. Although
Appellant couches this argument in terms of legal and factual sufficiency,
whether Appellee reported a violation of law to an appropriate law enforcement
authority is a question of law. Therefore, we apply a de novo standard of
review. Rogers v. City of Fort
Worth, 89 S.W.3d 265, 274 (Tex. App.--Fort Worth 2002, no pet.).
Appellant claims that Appellee's reports
could not provide Appellee protection under the Act. In support of this
argument, Appellant argues that the reporting of an off-duty police officer's
illegal activity, which had no connection to his job as a police officer, was
not protected under the Act. Appellant further argues that the Texas Labor Code
provided Appellee her exclusive remedy for her two sexual harassment reports
and, in the alternative, she did not file the reports with the appropriate
agency. Appellee responds by stating that the evidence shows that the three
reports were protected under the Act.
The record shows that the trial court
dismissed Appellee's claims under the Texas Labor Code, and Appellee did not
appeal this dismissal. Further, the record shows that Appellee only made her
report of Officers Riggs' and Walton's alleged violations of the Fort Worth
Police Department's sexual harassment policy to Appellant. The Texas Supreme
Court has held that a party who wants protection under the Act must report a
violation to the proper agency. Tex.
Dep't of Transp. v. Needham, 82 S.W.3d 314, 319 (Tex. 2002). The proper
agency, in this case, is one that has the authority to regulate under, enforce,
investigate, or prosecute a violation of Texas's sexual harassment and
employment retaliation statutes. Id.
This court has held that a city's general authority to regulate under, enforce,
and investigate claims of sexual harassment is not enough to make it an
appropriate law enforcement authority under the Act. See
City of Weatherford v. Catron, 83 S.W.3d 261, 268-69 (Tex. App.--Fort Worth
2002, no pet.) (holding as a matter of law that the City is not an appropriate
law enforcement authority under section 554.002(b) for the reporting of another
employee's violation of federal or state sexual harassment laws). We hold that
Appellee's sexual harassment and employment retaliation reports were not
reported to the appropriate agency and, therefore, cannot form the basis of a
whistleblower retaliation claim under these facts.
Appellant further alleges that Appellee's
report of Harkrider's criminal activity cannot form the basis of a claim under
the Act. The basis of Appellant's allegation lies in the fact that neither
Harkrider nor Appellee were on duty at the time the crime was committed. As
such, Appellant claims that Harkrider's actions did not relate to the affairs of
the police department and that our decision in City
of Cockrell Hill v. Johnson should be expanded to include this set of
facts. City of Cockrell Hill v.
Johnson, 48 S.W.3d 887 (Tex. App.--Fort Worth 2001, pet. denied). We
disagree.
In Johnson,
we held that, because an unpaid public official was not a public employee and
the alleged violations of law at issue were committed in the elected public
official's personal capacity and did not relate to the affairs of the city
itself, the Act did not apply. Id.
at 896. In this case, Harkrider was a paid city employee. Further, the fact that
both Harkrider and Appellee were police officers weighs in heavily on our
decision.
The evidence shows that Appellee acted in
her official capacity as a police officer when she made the report because
police officers are on duty 24 hours a day. See
Turnage v. JPI Multifamily, Inc.,
64 S.W.3d 614, 621 (Tex. App.--Houston [1st
Dist.] 2001, no pet.) (holding that police officers have a duty to prevent crime
and arrest offenders 24 hours a day, and that a public duty is triggered any
time an officer observes a crime, even outside the hours of his official work).
Appellee witnessed a felony being committed in this case, and while it is true
that she was the victim of the felony, this fact does not strip Appellee of her
public duty to arrest the offender.
We also rely on a decision made by the
Austin Court of Appeals in determining that the reporting of a criminal
violation committed by an off-duty police officer is protected under the Act. City
of San Antonio v. Heim, 932 S.W.2d 287 (Tex. App.--Austin 1996, writ
denied). In Heim, a police
officer alleged that his superiors retaliated against him for arresting an
off-duty police officer for driving while intoxicated. Id.
at 289. The court held that the alleged criminal act of DWI, if true, was a
violation of the arrested officer's official duty as a police officer to obey as
well as enforce the law. Id.
at 290. Here, Harkrider pled guilty to aggravated kidnaping which is, of course,
a violation of Harkrider's official duty as a police officer to obey as well as
enforce the law. Id.
Therefore, we hold that Harkrider was a public employee and he violated his
official duty to obey as well as enforce the law when he committed aggravated
kidnaping. It is undisputed that Appellee's report of Harkrider's conduct to the
Fort Worth Police Department was made to an appropriate law enforcement
authority. Therefore, Appellee's report of Harkrider was protected under the
Act. We overrule Appellant's first issue on appeal.
IV.
SUFFICIENCY OF THE EVIDENCE
In Appellant's issues two through six and
nine through eleven, Appellant states that the evidence was legally and
factually insufficient to prove the elements of a whistleblower cause of action.
Specifically, Appellant challenges the legal and factual sufficiency of the
evidence to support the finding that there was a good faith report of a
violation under the Act, that a report of a violation under the Act caused
Appellee's damages, and that Appellee suffered a constructive discharge in this
case.
A. Good Faith
In Appellant's second issue on appeal,
Appellant alleges that there was no evidence or legally insufficient evidence to
prove that Appellee reported a violation of law in good faith. Appellant,
however, stipulated to this fact at trial, and Appellee read the stipulation
into the record. The stipulation states "the parties have stipulated to the
following: That Cynthia DeOreo made a good faith reporting of a violation of law
in May 1996, when she reported to the Fort Worth Police Department that her
ex-husband, Tim Harkrider, Fort Worth Police officer, had assaulted her."
Appellant has, therefore, waived any challenge as to this finding. We overrule
Appellant's second issue on appeal.
B. Causation
In Appellant's third through sixth and
ninth through eleventh issues, Appellant claims that the evidence is both
legally and factually insufficient to support the finding that the Harkrider
report caused any of the instances of retaliation that Appellee complains of,
or, in the alternative, Appellant claims that these reports failed to show that
Appellee suffered intolerable working conditions which caused a constructive
discharge.
In determining a "no-evidence"
issue, we are to consider only the evidence and inferences that tend to support
the finding and disregard all evidence and inferences to the contrary. Bradford
v. Vento, 48 S.W.3d 749, 754 (Tex. 2001); Cont'l
Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); In
re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Anything more
than a scintilla of evidence is legally sufficient to support the finding. Cazarez,
937 S.W.2d at 450; Leitch v.
Hornsby, 935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla of evidence
exists if the evidence furnishes some reasonable basis for differing conclusions
by reasonable minds about the existence of a vital fact. Rocor
Int'l, Inc. v. Nat'l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).
A "no-evidence" issue may only
be sustained when the record discloses one of the following: (1) a complete
absence of evidence of a vital fact; (2) the court is barred by rules of law or
evidence from giving weight to the only evidence offered to prove a vital fact;
(3) the evidence offered to prove a vital fact is no more than a mere scintilla
of evidence; or (4) the evidence establishes conclusively the opposite of a
vital fact. Uniroyal Goodrich
Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998) (citing Robert
W. Calvert, "No
Evidence" and
"Insufficient Evidence" Points of Error, 38 TEX.
L. REV.
361, 362-63 (1960)), cert. denied, 526 U.S. 1040 (1999).
To prove causation in a
whistleblower case, an employee need not prove that her reporting of the illegal
conduct was the sole reason for the employer's adverse action. Tex. Dep't of
Human Servs. v. Hinds, 904 S.W.2d 629, 636 (Tex. 1995); City of Fort
Worth v. Zimlich, 975 S.W.2d 399, 406 (Tex. App.--Austin 1998), rev'd
in part on other grounds, 29 S.W.3d 62 (2000). Rather, to show causation, a
public employee must demonstrate that after he or she reported a violation of
law, in good faith, to an appropriate law enforcement authority, the employee
suffered discriminatory conduct by his or her employer that would not have
occurred when it did had the report not been made. City of Fort Worth v.
Zimlich, 29 S.W.3d 62, 67 (Tex. 2000); Hinds, 904 S.W.2d at 637.
This causation standard has been described as a "but for" causal nexus
requirement. See Tex. Natural Res. Cons. Comm'n v. McDill, 914 S.W.2d
718, 723 (Tex. App.--Austin 1996, no writ).
Circumstantial evidence may be
sufficient to establish a causal link between the adverse employment action and
the reporting of the illegal conduct. Zimlich, 29 S.W.3d at 69. Such
evidence includes: (1) knowledge of the report of illegal conduct; (2)
expression of a negative attitude toward the employee's report of the conduct;
(3) failure to adhere to established company policies regarding employment
decisions; (4) discriminatory treatment in comparison to similarly situated
employees; and (5) evidence that the stated reason for the adverse employment
action was false. Id.; Cazarez, 937 S.W.2d at 451. But
evidence that an adverse employment action was preceded by a superior's negative
attitude toward an employee's report of illegal conduct is not enough, standing
alone, to show a causal connection between the two events. There must be more. Zimlich,
29 S.W.3d at 69.
Appellee alleges, as her first
example of retaliation, that in November of 1999, Appellant denied her request
to attend DWI instructor school. The evidence at trial showed that police
officers who were not in the DWI unit were given the opportunity to go to the
school. The evidence further shows that as a known prerequisite for the course,
Appellee was required to take a basic police officer instructor course. In
response to Appellee's request to attend the DWI instructor school, Appellee's
superiors attempted to send Appellee to the prerequisite course. Due to
scheduling conflicts, however, Appellee failed to take that course. Therefore,
she failed to qualify to attend the DWI Instructor School.
At trial, Appellee claimed that
officers who might have had less seniority or experience than she had were
allowed to attend DWI instructor school while she was not. Appellee never
claimed, however, that any of these officers lacked the basic training
prerequisites for the school that she did. Therefore, Appellee provided no
evidence that her filing of the Harkrider report caused Appellant to treat her
application for the DWI Instructor School differently than any other officer's.
The next instance of retaliation
allegedly occurred on January 6, 2000. On that day, Appellee was sitting in a
briefing room while a group of officers including Officer Riggs, Sergeant
Peoples, Sergeant Maldonado, and Officer Hernandez were sitting in the adjoining
room. Officer Hernandez made a comment to Officer Riggs about him always
complaining, and Officer Riggs stated, "What are you talking about? You sit
next to DeOreo and her mouth is always open bitching." Appellee filed an
internal office correspondence report in response to Officer Riggs's comment
with Sergeant Peoples, but the report failed to go through proper channels.
Appellee alleges that the incident and the manner in which the police department
investigated the incident showed a retaliatory intent on the part of Appellant.
We disagree.
Testimony at trial showed that
Appellee was not in the room when the offending conversation occurred. Appellee
offered no evidence to show that Officer Riggs intended for her to hear the
comment, knew she would hear it, or that his motivation was to retaliate against
her for filing a report against Harkrider. The fact that Appellee overheard a
conversation about her, and that the conversation was derogatory in nature does
not amount to retaliation under the Act. Zimlich, 29 S.W.3d at 69.
As to the allegation that the
manner in which the complaint was handled amounted to retaliation, evidence at
trial showed that the reported conduct did not violate the city's sexual
harassment policy. Further, even though no violation occurred, Appellee's
supervisor forced Riggs to apologize for the comment. This discipline
effectively prevented a recurrence of the complained of behavior. We hold that
the Riggs incident provided no evidence of a retaliatory intent on the part of
Appellant.
The third alleged instance of
retaliation occurred on March 28, 2000. On that night, a tornado ravaged
downtown Fort Worth. Due to the emergency, Appellant called Appellee to work on
her day off. During the night, officers from Appellee's unit were relieved one
by one; however, Appellee was not relieved from her assigned duty until well
after the rest of her unit had been allowed to go home. While Appellee waited to
be relieved, she overheard a conversation on the radio in which an unidentified
sergeant asked the dispatch officer if everyone had been relieved except for
Appellee. When the dispatch officer confirmed this to the sergeant, the sergeant
stated: "Good. I'm going home." Appellee eventually learned that
Captain Baldwin had told the dispatcher to make sure that Appellee was the last
one relieved that night. Appellee testified that Captain Baldwin had told her on
at least two occasions that "You've got the stigma attached to you because
of Tim Harkrider."
During trial, Captain Baldwin
testified that he knew of Appellee's report against Harkrider. He further
testified that he discussed the Harkrider report with Appellee and told her that
she had a stigma attached to her regarding the Harkrider incident. He told her
that "any type of incident with this - - you know, whether there's
discipline in the past, that if you - - you can work beyond that, then there's
not a problem." Captain Baldwin stated that he intended for this speech to
be positive and that he had given this speech to a number of officers before.
The evidence shows, however, that Captain Baldwin equated Appellee's action of
filing a report with another officer being disciplined for violating the rules.
Captain Baldwin not only knew of the Harkrider report, he also expressed a
negative attitude toward Appellee for filing the report, and he took an adverse
personnel action against her as a result by requiring her to work later than the
rest of her unit. This is some evidence of causation under the Act. Cazarez,
937 S.W.2d at 450; McDill, 914 S.W.2d at 723.
The fourth incident of alleged
retaliation occurred in April of 2000 and involved Appellee's request for
compensatory time instead of overtime pay during a Texas Motor Speedway duty
assignment. Earning compensatory time allowed a police officer to accrue time
off by working overtime. Apparently, Appellee and a number of other officers had
asked to receive compensatory time for working the event. When asked about
whether compensatory time could be accrued instead of overtime pay, Lieutenant
Schnake told the DWI unit that compensatory time was unavailable for the event.
Appellee later learned that some of her fellow officers had received
compensatory time instead of overtime pay for working the same event. When she
questioned her sergeant over the issue, he stated, "I guess it depends on
who you are around here." She further pursued the issue with Captain
Baldwin.
Captain Baldwin was in charge of
deciding whether compensatory time was awarded or not. Captain Baldwin stated
that he had no knowledge of the fact that Appellee had wanted compensatory time
instead of overtime pay for the race. Appellee's testimony confirms this
statement because Appellee only verbally requested compensatory time before the
race from Lieutenant Schnake. However, the evidence shows that when other
officers approached Captain Baldwin after the race and requested compensatory
time instead of overtime pay, he accommodated them. Captain Baldwin refused
Appellee's similar request for compensatory time. Again, this is some evidence
of causation under the Act. Cazarez, 937 S.W.2d at 450.
The fifth instance of alleged
retaliation involved another confrontation with a fellow police officer. This
incident occurred during roll call on May 4, 2000. Appellee was attempting to
work out a problem she had with JPS nurses, and Officer Walton interrupted
Appellee and said, "I don't have any problem." Appellee replied to
Officer Walton, "Well, that's good, but the rest of us have had problems,
and we need to discuss it." After roll call, Officer Walton approached
Appellee in the parking lot of the police station. He yelled at her, calling her
a "f---ing bitch," and, according to Appellee, was out of control.
Appellee filed another sexual
harassment report based on this instance. Appellee offered no evidence at trial
to show that Officer Walton's outburst was motivated by the Harkrider report.
There was no evidence to show that Officer Walton knew of the report or that he
harbored ill feelings regarding the report. The evidence offered at trial
through Appellee's testimony showed that Officer Walton's motivations were based
solely on the original altercation that occurred during roll call. However,
Appellee contends, and we agree, that the manner in which the department handled
Appellee's complaint provides evidence of causation under the Act.
Appellee testified at trial that
her superiors failed to properly investigate the sexual harassment report she
filed regarding the Walton incident. The evidence showed that her supervisors
took no action on Appellee's report for three weeks. After three weeks had
passed, Appellee sent a copy of the report to Lieutenant Jones, who was the
female coordinator. According to Appellee, Lieutenant Jones had no knowledge of
the report. Departmental policy required that Lieutenant Jones receive a copy of
any sexual harassment report filed by an officer. While waiting to talk to
Appellee, Lieutenant Jones contacted internal affairs, which also had no
knowledge of a report being filed over the incident. Appellee filed a new report
regarding the incident directly with internal affairs. Once Appellee filed the
new report, Appellee's superiors reassigned Officer Walton to the day shift
until they completed the investigation. After the completion of the
investigation, Officer Walton received a written reprimand and was placed back
into the DWI unit. Appellee claims that this action was contrary to assurances
she had received from her supervisors that Officer Walton would not be returned
to the DWI unit.
Captain Baldwin testified at trial
that the complaint did not amount to sexual harassment. Instead, Captain Baldwin
stated that the complaint only amounted to inappropriate conduct and use of
language. However, even if the final outcome of the investigation showed that
the report did not amount to sexual harassment, Chief Mendoza testified that
this report, unlike the Riggs incident, could have possibly violated the city's
sexual harassment policy, and Appellee's supervisors should have timely and
thoroughly investigated it. In the Riggs report, the evidence at trial showed
that the word "bitching" could be used interchangeably in referring to
a male or female officer who complains a lot. In contrast, according to Chief
Mendoza, the comment in the Walton report referred to Appellee being female and
was derogatory of that fact. This meant that the city's sexual harassment policy
might have been violated by this incident and an investigation should have been
ordered immediately.
The fact that the investigation
only occurred after Appellee went outside of her unit, coupled with the fact
that Captain Baldwin knew of the Harkrider report and regarded it in a
derogatory way, provides some evidence that this adverse employment action was
caused by Appellee's report of Harkrider. Zimlich, 29 S.W.3d at 69.
Appellee's sixth example of
retaliation involved her request to transfer during the Walton incident.
Appellee received a phone call from Deputy Chief Curtis after she made her
request to transfer. Deputy Chief Curtis allegedly asked her if she would stay
in the DWI unit if Walton was transferred and Deputy Chief Curtis could assure
her that she would not be retaliated against for the Walton incident. Appellee
testified that, in reliance on these assurances she withdrew her transfer
request voluntarily in hopes that the harassment would cease when Officer Walton
was transferred.
Appellee failed to show any
evidence that Deputy Chief Curtis was aware of the Harkrider report. Deputy
Chief Curtis testified that he was unaware of the Harkrider report, and that he
never promised Appellee that Officer Walton would be permanently transferred
from the DWI Unit. Further, there is no evidence that Appellee's superiors were
attempting to trick Appellee into staying in the DWI unit. The evidence shows
that Appellee's transfer request was approved prior to her withdrawing it.
Appellee testified that none of her superiors told her that a new transfer
request would not be granted. Appellee merely chose not to request a new
transfer. As such, no proof exists to show that Appellant induced Appellee's
withdrawal of her transfer request because of the Harkrider report.
In Appellee's final claim of
retaliation, she points to Appellant's denial of her application to transfer
from the DWI unit in a city wide sign-up. The announcement, addressed to all
Field Operations Bureau (FOB) commanders, stated that the sign-up applied to FOB
personnel only, and stated that if current NPO, bike officers, etcetera wanted
to participate in the sign-up, they had to resign their current assignments and
provide Deputy Chief Kneblick with an email or an interoffice correspondence
prior to June 30, 2000.
Appellee testified that she knew
that she was not in the Field Operations Bureau, but believed that she qualified
for the sign-up because she had sent an email to the officer in charge. But in
that email, Appellee had failed to resign from her current job before applying
for the sign-up, which was required. Appellee maintains, however, that Appellant
discriminated against her due to the Harkrider report over this action. As
proof, Appellee claims that Captain Baldwin called her at home and stated,
"You didn't hear this from me, but if you were anyone else, it would've
been handled - - your request would've been handled differently." When she
then asked him why her request would be handled differently than anyone else's,
he allegedly told her, "you've got the stigma attached to you because of
Tim Harkrider."
Deputy Chief Kneblick was in charge
of the sign-up. She testified at trial that she would not have allowed any
officer in a specialized unit, such as the DWI unit, to participate in the
city-wide sign-up because it could have depleted the specialized unit.
Apparently, the interview process for Appellee's job in the DWI unit would last
over a month. Thus, if Deputy Chief Kneblick had allowed the officers in such
specialized units to transfer out of these units en mass, the units would have
had insufficient strength for a long period of time. This meant that Appellant's
denial of Appellee's request to participate in the city-wide sign-up was based
on a legitimate nonretaliatory reason. Without further evidence of Deputy Chief
Kneblick's intent, the evidence offered amounted to nothing more than a mere
scintilla of evidence and was legally insufficient to establish causation. See
Cazarez, 927 S.W.2d at 450.
However, there is some evidence
that Captain Baldwin might have discriminated against Appellee during the
incident. The evidence shows that Appellee did not receive an explanation for
the denial of her request to participate in the sign-up from Deputy Chief
Kneblick. Instead, the evidence shows that Appellee's only explanation for the
denial was from Captain Baldwin. Appellee could have reasonably assumed that
Captain Baldwin, as her superior in the DWI unit, had some say in her request to
participate in the sign-up. In fact, in order for Appellee to resign her
position in the DWI unit, Captain Baldwin would have had to approve it. Appellee
could further have reasonably assumed that Captain Baldwin prevented her
transfer due to the Harkrider report. Captain Baldwin's statement could go to
show that he was harassing Appellee because of the Harkrider report. We hold
that there is some evidence to show that Captain Baldwin might have used the FOB
sign-up to retaliate against Appellee for making the Harkrider report. See
Cazarez, 937 S.W.2d at 450 (holding that circumstantial evidence that the
stated reason for an adverse employment action was false can be evidence of
causation in a whistleblower cause of action).
Having found that legally
sufficient evidence existed to support the finding of causation, we must now
determine if the evidence was factually sufficient as well. An assertion that
the evidence is "factually insufficient" to support a fact finding
means that the evidence supporting the finding is so weak or the evidence to the
contrary is so overwhelming that the answer should be set aside and a new trial
ordered. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). We are
required to consider all of the evidence in the case in making this
determination. Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07
(Tex.), cert. denied, 525 U.S. 1017 (1998).
The evidence shows that Captain
Baldwin knew of the Harkrider report and that he reflected upon Appellee
negatively for filing the report. While Captain Baldwin attempted to place the
conversation in which he had stated that Appellee had a stigma attached to her
due to the Harkrider incident in a good light, the evidence shows that he
reflected negatively on the incident. Captain Baldwin stated that the Harkrider
incident was something that Appellee could eventually work her way out of. He
claimed that he had this same conversation with police officers who had been
disciplined for violating the rules, and equated Appellee's situation with those
officers.
The evidence further shows that
Captain Baldwin forced Appellee to work longer than the other members of the
unit on the night of the tornado. Captain Baldwin also denied Appellee's request
for compensatory time while granting it to similarly situated officers. Further,
Captain Baldwin was responsible for not allowing the Walton report to go through
proper channels, and he told Appellee that her request to participate in the
sign-up was denied due to the Harkrider report.
Appellant responds by attempting to
show legitimate reasons for the adverse actions taken by Captain Baldwin.
Appellant first claims that the evidence shows that Captain Baldwin would not
have chosen to retaliate against Appellee during one of the city's most
devastating natural disasters the city has had. We note, however, that Appellant
failed to come forward with an alternative explanation for the comment that
Appellee heard over the radio, or Captain Baldwin's motivation for requiring
Appellee to stay late on that night. As such, Appellant has not shown any
evidence of a legitimate nondiscriminatory reason for Captain Baldwin to require
Appellee to remain late on the night of the tornado.
Appellant also claims that the
evidence was insufficient to show that the Harkrider report caused Captain
Baldwin to treat Appellee differently by requiring her to take overtime pay
instead of the requested compensatory time for her work at the race track. The
evidence shows that Appellee verbally requested compensatory time instead of
overtime pay for the race. Appellant claims that Appellee did not initially
communicate this request directly to Captain Baldwin who was responsible for
this decision. Appellee claims that she told Captain Baldwin that she wanted
compensatory time after she received her check and found out that other officers
had received compensatory time for working races.
Captain Baldwin testified that
there was a misunderstanding as to whether or not compensatory time was going to
be allowed for the races because the events were specially funded. Captain
Baldwin stated that he eventually allowed compensatory time for these races and
that if an officer would tell him that they wanted compensatory time instead of
overtime pay for these events in a "timely manner," he would authorize
the change in the officer's pay check. Appellant has failed to show how long a
"timely manner" was and how Appellee's request for compensatory time
fell outside of those parameters. The only evidence at trial shows that
Appellee's request was treated differently than those of other officers in
similar circumstances.
Regarding the Walton incident, the
evidence shows that the manner in which Appellant handled the Walton report
differed from what the city's sexual harassment policy required. Captain Baldwin
testified that he reacted immediately to the report and ordered an investigation
when he read it. However, Appellee introduced evidence to show that neither the
office of internal affairs nor the female coordinator knew of the report until
Appellee followed up on it three weeks after filing it. Appellee further
testified that this violated the department's policy regarding the handling of
sexual harassment reports.
Captain Baldwin testified that he
did not feel that the comment violated Appellant's sexual harassment policy, but
Chief Mendoza testified that if the comment could be proved, it might very well
violate the City's sexual harassment policy. The weight given to contradictory
testimonial evidence is within the sole province of the fact finder because it
turns on an evaluation of credibility and demeanor. See Cain v. State,
958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). Thus, we must defer to the fact
finder's weight-of-the-evidence determinations. See id. at 409. The
evidence supports an inference that Appellant through Captain Baldwin attempted
to delay a legitimate sexual harassment report because of the Harkrider report. Cazarez,
937 S.W.2d at 450.
Finally, the fact that Appellant
showed a legitimate nondiscriminatory reason for not granting Appellee's request
to participate in the city-wide sign-up does not prove that she was not
subjected to discrimination for the Harkrider report in that situation. The
evidence shows that Captain Baldwin gave her a false reason for the denial.
Captain Baldwin told Appellee that her request would have been handled
differently if not for the Harkrider report, while the evidence shows that the
real reason was because Appellee had failed to resign her current job with the
DWI unit. The evidence further shows that Captain Baldwin refused to allow
Appellee to see the memo explaining why she was not allowed to participate in
the sign-up. The memo was dated June 27th, and the FOB sign-up was
not closed until June 30th. This meant that had Captain Baldwin
informed Appellee of the true reason or allowed Appellee to see the memo
explaining the true reason when the memo was issued on the 27th,
Appellee could have corrected her mistake and participated in the sign-up. The
fact finder could have concluded that Captain Baldwin was attempting to prevent
Appellee from transferring out of his unit by refusing to tell her the true
reason for the denial in a timely manner and, instead, telling her that the
Harkrider report had caused the denial.
We hold that the evidence is
factually sufficient to show that Appellee would not have suffered adverse
employment actions but for the fact that she filed a protected report under the
Act. Having held that Appellee suffered adverse employment actions because of
the Harkrider report, we must now determine whether the evidence is legally and
factually sufficient to show that the adverse employment actions caused
Appellee's constructive discharge.
A constructive discharge occurs
when an employer makes conditions so intolerable that an employee reasonably
feels compelled to resign. Wal-Mart Stores, Inc. v. Bertrand, 37 S.W.3d
1, 8 (Tex. App.--Tyler 2000, pet. denied). To find a constructive discharge, the
fact finder must determine whether or not a reasonable person in the employee's
position would have felt compelled to resign. Green v. Industrial Specialty
Contractors, Inc., 1 S.W.3d 126, 134 (Tex. App.--Houston [1st
Dist.] 1999, no pet.). It is necessary to examine the conditions imposed, not
the employer's state of mind. Hammond v. Katy ISD, 821 S.W.2d 174, 177
(Tex. App.--Houston [14 Dist.] 1991, no writ). Therefore, an employee does not
need to prove that an employer subjectively intended to force the employee to
resign. Id.
The evidence includes a number of
factors that go to show a constructive discharge, including: Captain Baldwin's
comments that Appellee had a stigma attached to her because of the Harkrider
report; Captain Baldwin's attitude that the Harkrider report was a disciplinary
violation; Appellant denying Appellee's request for compensatory time instead of
overtime; Appellant's complete failure to forward Appellee's complaint about the
Walton incident through the proper channels; Captain Baldwin's belief that the
incident did not constitute sexual harassment; and Captain Baldwin's false
comments to Appellee about the reason she was not allowed to participate in the
FOB sign-up. Further, Officer Thompson and Officer Ramero both testified that if
they had suffered the retaliation that Appellee had, they would have resigned.
Considering only the evidence and inferences that tend to support the finding
and disregarding all evidence and inferences to the contrary, we hold that the
evidence was legally sufficient to support a finding of constructive discharge. Bradford,
48 S.W.3d at 754.
Appellant claims that, even if some
evidence shows that Appellee was constructively discharged, the evidence was
factually insufficient to support such a finding. Appellant claims that the four
instances of retaliation were not severe enough to prove that a reasonable
person in Appellee's situation would have resigned. We disagree.
Appellant claims that the fact that
Appellee was required to work longer on one night and was required to take
overtime pay instead of compensatory time did not make her work environment
intolerable. Appellant further states that the evidence of retaliation regarding
the Walton incident did not show an intolerable working environment. Instead,
Appellant claims that the facts show that Appellant conducted a thorough
investigation over the Walton incident once it was filed for the second time.
Further, Officer Walton received a written reprimand over the incident. The
evidence further shows that the written reprimand was effective to prevent a
repeat offense in this case. Appellant contends that the fact that the
investigation should have begun over three weeks earlier did not make Appellee's
working conditions intolerable. Finally, Appellant states that the denial of
Appellee's request to participate in the city-wide sign-up could not provide
enough evidence to support a finding of constructive discharge.
Appellee offered her own testimony
along with that of Officer Ramero and Officer Thompson to show that a reasonable
person who suffered the retaliation that Appellee suffered would have resigned.
Officer Ramero testified that, based on the health effects Appellee was
suffering from, she would have resigned under similar circumstances. Officer
Thompson testified that Appellee's work environment was intolerable. He
testified that being a police officer was all he had ever wanted to be, but if
he had been treated the same way Appellee was treated, he would have quit.
The evidence further shows that
Appellee could be attacked verbally and nearly physically by one of her fellow
police officers without any immediate protection from her supervisors. Appellee
was forced to seek a transfer from her unit before a proper investigation over
the Walton incident began. This is the same incident that the chief of police
testified could amount to sexual harassment if proven.
Further, the evidence shows that
Captain Baldwin expressed displeasure over the Harkrider report. He then began a
systematic form of harassment. He forced Appellee to work later than the rest of
her unit. The evidence shows that Captain Baldwin then refused her request for
compensatory time while granting other officers' similar requests.
The evidence further supports the
conclusion that Captain Baldwin attempted to cover up a potentially dangerous
situation between Officer Walton and Appellee. Captain Baldwin testified that he
felt that the Walton incident was similar to the Riggs incident. He testified
that both incidents amounted to merely inappropriate language. The evidence
shows that no one outside of the DWI unit knew of the Walton report three weeks
after the incident, which was against Appellant's sexual harassment policy. It
is reasonable to assume that Captain Baldwin was not going to report the Walton
incident like he decided not to report the Riggs incident.
Finally, when Appellee attempted to
transfer away from her superiors and Captain Baldwin, the evidence shows that he
attempted to prevent her from transferring. The evidence shows that Captain
Baldwin refused to allow Appellee to review the memorandum explaining her denial
to participate in the sign-up. Had Captain Baldwin allowed Appellee to do so,
she might have been able to resign her current position and participate in the
sign-up. The manner in which Captain Baldwin prevented Appellee's transfer left
the reasonable impression with Appellee that Captain Baldwin would not allow her
to transfer to a different unit.
Appellant acknowledges that one
factor that can go to prove a constructive discharge is when the employer
badgers, harasses, or humiliates an employee in order to encourage the
employee's resignation. Barrow v. New Orleans Steamship Ass'n, 10 F.3d
292, 297 (5th Cir. 1994) (holding that there are seven factors a fact finder
looks at to determine whether a constructive discharge occurred, one of which is
badgering, harassment, or humiliation by the employer calculated to encourage
the employee's resignation). The evidence shows that Captain Baldwin knew of the
Harkrider report; he equated Appellee with another officer who was disciplined
for breaking the rules, which showed that he looked on the Harkrider report with
some amount of disdain; he delayed a legitimate harassment report filed by
Appellee, which caused Appellee to remain in close proximity to the offending
officer for three weeks after the incident; he actively prevented Appellee from
transferring out of his unit, which caused Appellee to reasonably think that she
would not be allowed to transfer at all; and then he harassed Appellee claiming
that the report was responsible for her not obtaining a transfer. This evidence
was factually sufficient to show that Appellant intended to badger, harass,
and/or humiliate Appellee in order to encourage her to resign. Id. We
overrule Appellant's third through sixth and ninth through eleventh issues on
appeal.
V. BACK PAY
Appellant claims in its seventh
issue that the evidence is legally and factually insufficient to support the
trial court's damages award. Specifically, Appellant claims that the evidence
was legally and factually insufficient to support the finding that Appellant's
actions caused Appellee to lose $55,000 in back pay. Appellant failed to further
brief this contention. Appellant gives no record references, arguments, or case
law to support its contention. Appellant has, therefore, waived its seventh
issue on appeal. See Tex. R. App. P. 38.1(h); Tarrant County v. Van
Sickle, 98 S.W.3d 358, 369 (Tex. App.--Fort Worth 2003, pet. denied).
VI. COMPENSATORY
DAMAGES
Appellant claims in its eighth
issue that the evidence was legally and factually insufficient to support the
compensatory damages award. Specifically, Appellant claims that the evidence is
insufficient to support the court's award and judgment of $25,000 in
compensatory damages. Appellant claims that the trial court erred because
Appellee is only entitled to recover a sum that will reasonably and fairly
compensate her for her actual damages. While Appellant concedes that Appellee
may be entitled to mental anguish damages if she proved them, Appellant claims
that there was no evidence or, in the alternative, insufficient evidence to
support an award of mental anguish damages in this case.
A mental anguish damages award
cannot be supported absent direct evidence of the nature, duration, or severity
of the anguish, thus establishing a substantial disruption in the plaintiff's
daily routine, or other evidence of a high degree of mental pain and distress
that is more than mere worry, anxiety, vexation, embarrassment, or anger. Saenz
v. Fidelity & Guar. Ins. Underwriters, 925 S.W.2d 607, 614 (Tex. 1996);
Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995). Using these
standards, appellate courts must closely scrutinize mental anguish damages
awards. Universe Life Ins. Co. v. Giles, 950 S.W.2d 48, 54 (Tex. 1997).
The evidence shows that Appellee
suffered physically as a result of Appellant's retaliation based on the
Harkrider report. Appellee testified that she cried a lot and experienced severe
anger over the incidents. She stated that she felt like she had betrayed her
father's memory by leaving the police force. She suffered feelings of worry and
dread. Appellee's stress eventually led to her hospitalization for treatment of
high blood pressure during the time when Appellant was retaliating against her.
Appellee and Officer Thompson both testified that her blood pressure rose to
stroke level and that she ordinarily had low blood pressure. This evidence goes
beyond showing mere worry, anxiety, vexation, embarrassment, or anger. Saenz,
925 S.W.2d at 614; Woodruff, 901 S.W.2d at 444. These facts provide
legally and factually sufficient evidence to show that Appellee's health was
impacted by the retaliation to such a degree that she is entitled to mental
anguish damages. We, therefore, overrule Appellant's eighth issue on appeal.
VII. CONCLUSION
Having overruled all of Appellant's
points on appeal, we affirm the trial court's judgment.
 
                                                             
        
SAM J. DAY
                                                             
         JUSTICE
 
PANEL A: DAY, LIVINGSTON, and
DAUPHINOT, JJ.
DELIVERED: July 31, 2003