The CITY OF WEATHERFORD,
Texas, Appellant and
Appellee,

v.

Kevin CATRON and Kelli Catron,
Appellees and Appellants.

No. 02–01–008–CV.

Court of Appeals of Texas,
Fort Worth.

July 18, 2002.

Abrams, Scott & Bickley, L.L.P., Barry Abrams, Ramon G. Viada III, Houston, for City of Weatherford, Texas.

Lewis & Hutchison, P.C., Susan E. Hutchison, Kern A. Lewis, Fort Worth, for Kevin Catron and Kelli Catron.

Panel B: DAUPHINOT, HOLMAN, and WALKER, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

This appeal stems from a judgment against the City of Weatherford, Texas ("the City"), in favor of former employees Kevin and Kelli Catron. In five issues, the City complains that Kelli Catron failed to meet mandatory pre-suit grievance requirements, that the Catrons' claims based on the reports of sexual harassment were preempted, that the evidence is legally or factually insufficient to support the verdict, that the trial court erred in defining "appropriate law enforcement authority," and that the attorney's fees awarded were excessive. In one cross-issue, the Catrons complain that the trial court erred by excluding prejudgment interest from the jury award. We affirm in part, reverse and render in part, and remand in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kevin Catron was a water plant manager for the City of Weatherford. The City fired Kevin after he initiated an in-house sexual harassment claim against a supervisor, Assistant Utility Director Sharon Hayes, whose advances he had spurned, and after he had allegedly refused to falsify a report to conceal from Texas Natural Resources Conservation Commission (TNRCC) low chlorine levels in the water supply. Kevin decided, instead, to tell Rudy DeLeon, the environmental investigator for TNRCC, about the order to falsify the report and about the sites that DeLeon should sample for low or no chlorine. Kevin tried to tell the City Manager about the water quality issues and the order to falsify documents, but he was turned away. Kevin was terminated and then filed suit.

Meanwhile, Kevin's wife, Kelli Catron, who served as executive secretary to Hayes, had expressed her concerns about Hayes to Personnel Director Tammy Sinclair. Kelli believed that Hayes was ignoring Kevin's concerns about the water supply because of personal issues from the past; specifically, Kelli joined Kevin in believing that Hayes was jealous of Kelli because of her relationship with Kevin. Kelli believed that this jealousy was reflected in Hayes and her co-workers' treatment of her.

Kelli was placed on administrative leave on the same day that Kevin confirmed to the personnel director that he would be pursuing a sexual harassment claim against Hayes, which was a week after Utility Director James Dickason reprimanded Kevin in a written memorandum for going to the city manager about the water problems. Dickason told Kelli that Hayes felt uncomfortable having her as a secretary. Rather than go on extended leave, Kelli volunteered to substitute for an employee in another department who was going on maternity leave. Dickason transferred Kelli to this position of customer service representative in the finance department. She was initially told that the transfer would be permanent and a pay grade lower. Later she received a raise and notice that the transfer was temporary. She remained as a temporary employee for about a year. During that time, Hayes and her co-workers continued to harass Kelli, even though she was no longer under Hayes's supervision. Co-workers tracked Kelli's work habits and tattled to Hayes. Hayes approached Kelli's new supervisor to question her work habits. Co-workers discussed Kelli's report to the personnel director about the sexual harassment concerns, and they also repeated a comment Hayes had made about Kelli being "a slut".

During this stressful year, Kelli began having physical pain of various types. She was diagnosed with fibromyalgia, a stress-related condition. She had never experienced the cluster of symptoms or been similarly diagnosed before she reported the sexual harassment. She joined Kevin's lawsuit on October 7, 1998, after receiving negative evaluations from her three former bosses and after her former executive secretarial position had been eliminated. She did not quit her job until the end of July 1999. While she grieved her demotion and transfer as well as the negative performance evaluations, she never grieved the elimination of the secretarial position or her resignation.

The Catrons alleged at trial that the City retaliated against them for accusing Hayes of harassment and for Kevin's reports of the water treatment violations.

The jury found that Kevin and Kelli each reported "possible violation[s] of the law in good faith to an appropriate law

enforcement authority" and that the reports were "a cause of the city suspending or discharging" them. The jury awarded the Catrons damages for past and future lost wages and employment benefits, past compensatory damages, and attorney's fees. Additionally, the jury awarded future compensatory damages to Kelli. The final judgment excluded prejudgment interest.

## II. LEGAL ANALYSIS

### A. Mandatory Pre–Suit Requirements

■ In its first issue, the City argues that "Kelli Catron failed to satisfy the mandatory pre-suit grievance requirements of" section 554.006 of the Texas Government Code. Specifically, the City argues that she failed to grieve her constructive discharge under the personnel policy. Appellees respond that Kelli's claim "is based upon a series of events constituting retaliation ... culminat[ing] in the transfer of Ms. Catron to a different position and hostile treatment and accusations by department managers." Appellees thus do not contest Appellant's claims that Kelli did not grieve the elimination of the executive secretarial position from which she had been removed or any acts subsequent to the date of her last grievance.

A review of the record and the jury charge shows that even though Kelli did not complain about the termination of her executive secretarial position and her actual resignation in her petition, the issue of wrongful termination was tried by consent.[1] Kelli's testimony and Plaintiffs' Exhibit 48, a chart of her past lost earnings, show that the amount the jury awarded, $23, 455.60, was for a year's annual salary and health insurance benefits, salary and benefits that she did not lose until she quit. Plaintiff's Exhibit 26 shows that her future lost earnings were computed based on the month and year of her actual resignation.

■ Because the issue was tried by consent, it is treated as if it appeared in the pleadings.[2] Under the Whistleblower Act, an employee must initiate the grievance procedure and give her employer sixty days to resolve the matter before filing suit.[3] When an employee files suit without satisfying the mandatory statutory prerequisites, the trial court lacks jurisdiction over the claim.[4] Because Kelli Catron tried the issue of wrongful termination without initiating the grievance procedure required, the trial court lacked subject matter jurisdiction over her claims. We sustain Appellant's first issue. We therefore do not reach any other issues regarding her claims. Accordingly, we reverse the trial court's judgment regarding Kelli Catron and render judgment that Kelli Catron take nothing.

### B. Sufficiency of the Evidence

In its third issue, regarding Kevin's claims based on sexual harassment reports, the City argues that the evidence is legally insufficient to prove the statutory

1. *See* Tex.R. Civ. P. 67 (stating that issues not raised by the pleadings but tried by express or implied consent of the parties are treated in all respects as if they had been raised in the pleadings).

2. *Id.*

3. Tex. Gov't Code Ann. § 554.006(a), (d) (Vernon Supp.2002).

4. *Johnson v. City of Dublin*, 46 S.W.3d 401, 405 (Tex.App.-Eastland 2001, pet. denied); *City of San Antonio v. Marin*, 19 S.W.3d 438, 441 (Tex.App.-San Antonio 2000, no pet.); *Gregg County v. Farrar*, 933 S.W.2d 769, 777 (Tex.App.-Austin 1996, writ denied).

elements of "appropriate law enforcement authority," "good faith," and "violation of law," and further argues that the evidence is legally insufficient to prove that the City retaliated against Kevin Catron. Regarding the claims based on the water quality reports, the City argues that the evidence is legally insufficient to prove the statutory elements of "violation of law" and causation. Alternatively, for all claims, the City argues that the evidence is factually insufficient on all of these grounds.

### 1. Standards of Review

#### a. Legal Sufficiency

In determining a "no-evidence" issue, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary.[5] Anything more than a scintilla of evidence is legally sufficient to support the finding.[6]

A "no-evidence" issue may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence .offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact.[7] There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact.[8]

When we sustain a "no-evidence" issue, it is our duty to render judgment for the appellant because that is the judgment the trial court should have rendered.[9]

#### b. Factual Sufficiency

An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.[10] We are required to consider all of the evidence in the case in making this determination.[11] But generally, we do not have to detail supporting evidence when upholding the factual sufficiency of the evidence underlying the trial court's judgment.[12]

### 2. The Retaliation Claims Based on Sexual Harassment Reports

The City argues that the evidence is legally insufficient to prove that Dicka-

5. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex. 2001); *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

6. *Cazarez,* 937 S.W.2d at 450; *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996).

7. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L. REV. 361, 362–63 (1960)), *cert. denied,* 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999).

8. *Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex. 1992).

9. *See* TEX. R. APP. P. 43.3; *Vista Chevrolet, Inc. v. Lewis,* 709 S.W.2d 176, 176 (Tex.1986) (quoting *Nat'l Life & Accident Ins. Co. v. Blagg,* 438 S.W.2d 905, 909 (Tex.1969)).

10. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965).

11. *Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.), *cert. denied,* 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

12. *Ellis County State Bank v. Keever,* 888 S.W.2d 790, 794 (Tex.1994).

son and Sinclair are appropriate law enforcement authorities for the purpose of Kevin's sexual harassment claims. We agree.

Section 554.002 of the Whistleblower Act provides:

[A] report is made to an appropriate law enforcement authority if the authority is part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to:

(1) regulate under or enforce the law alleged to be violated in the report; or

(2) investigate or prosecute a violation of criminal law.[13]

In *Texas Department of Transportation v. Needham*, the Supreme Court of Texas recently held that this statutory definition of "law enforcement authority" does not "include an employer's general obligation to internally discipline its own employees."[14] As the court pointed out,

[I]t is clearly not enough that a government entity has *general* authority to regulate, enforce, investigate, or prosecute. Rather, to determine if a governmental entity qualifies as an "appropriate law enforcement authority," we are bound to construe that term as the statute defines it. . . . In other words, the particular law the public employee reported violated is critical to the determination. Thus here, we must determine whether TxDOT has the authority to

regulate under, enforce, investigate, or prosecute a violation of Texas's driving while intoxicated laws.[15]

In *Needham*, the Texas Supreme Court held that TxDOT was not an appropriate law enforcement authority for reports about employees driving while intoxicated because it "has no authority to regulate under or enforce" or "investigate or prosecute" Texas's laws on driving while intoxicated.[16] It at most has the power to conduct its own "internal disciplinary process procedures."[17] According to the Supreme Court of Texas, to hold otherwise "would mean all public employers with a disciplinary policy for handling employees' alleged illegal conduct are 'appropriate law enforcement authorities' for purposes of reporting any alleged violation. We reject such an interpretation."[18]

 Similarly, in the case before us, the City's general authority to regulate under, enforce, and investigate claims of sexual harassment is not enough to make it an appropriate law enforcement authority under the Whistleblower Act. If the City were an appropriate law enforcement authority for the reporting of sexual harassment claims, then the Texas Commission on Human Rights and the statutory procedures and limitations applicable to such claims would be meaningless.[19] We therefore hold as a matter of law that the City is not an appropriate law enforcement

---

13. TEX. GOV'T CODE ANN. § 554.002(b) (Vernon Supp.2002).

14. 45 Tex. Sup.Ct. J. 631, 634, 2002 WL 924463, at *5 (Tex. May 9, 2002). A motion for rehearing is pending on this case; we thus recognize that it is not yet final. *See Martin v. Tex. Woman's Hosp., Inc.*, 930 S.W.2d 717, 725 n. 7 (Tex.App.-Houston [1st Dist.] 1996, no writ).

15. *Needham*, 45 Tex. Sup.Ct. J. at 635, 2002 WL 924463, at *5.

16. *Id.*, 45 Tex. Sup.Ct. J. at 635, 2002 WL 924463, at *6.

17. *Id.*

18. *Id.*

19. See TEX. LAB.CODE ANN. § 21.201 (Vernon 1996); *Gonzales v. Willis*, 995 S.W.2d 729, 740 (Tex.App.-San Antonio 1999, no pet.).

authority under section 554.002(b) for the reporting of another employee's violation of federal or state sexual harassment laws.

Even though the City was not an appropriate law enforcement authority for the reporting of Kevin's sexual harassment claims, if he had a good faith belief that the City was an appropriate law enforcement authority, then the statutory test is satisfied.[20] In *Needham,* the Supreme Court of Texas held that in the context of section 554.002(b), "good faith" means:

> (1) the employee believed the governmental entity was authorized to (a) regulate under or enforce the law alleged to be violated in the report, or (b) investigate or prosecute a violation of criminal law; and
>
> (2) the employee's belief was reasonable in light of the employee's training and experience.[21]

The only evidence Needham relied on to show his good faith was "TxDOT's disciplinary process, his participation therein, and his belief that TxDOT could forward information to another entity to prosecute a drunk driving allegation."[22] The Supreme Court of Texas held that there was therefore "no evidence to support a finding that Needham had a good faith belief that TxDOT was an appropriate law enforcement authority under the Whistleblower Act."[23]

Similarly, the only evidence Kevin relies on shows that he reported to Tammy Sinclair, the personnel director, because she was the person the City designated to address the issue in-house. He reported to James Dickason, Utilities Director, because he had the ultimate authority within the workplace to investigate Hayes's conduct and order it to cease. He had direct authority over Hayes and testified that he had the authority to take remedial action. This evidence all points to the City's internal discipline.

We therefore hold that this evidence is no evidence that Kevin had a good faith belief that Sinclair and Dickason were appropriate law enforcement authorities under the Whistleblower Act for sexual harassment claims. Because the City is not an appropriate law enforcement authority for reports of sexual harassment claims as a matter of law, and because there is no evidence that Kevin had a good faith belief that the City was an appropriate law enforcement authority, we sustain the City's issue in part on these grounds. Our holdings on these grounds dispose of Kevin's retaliation claims based on the sexual harassment reports. We therefore need not reach any further grounds or issues concerning Kevin's claims based on sexual harassment reports.

We note that even if the trial court had had jurisdiction over Kelli's claims, our holdings on these grounds would have also disposed of all of her claims. Kevin, on the other hand, also reported claims of the City's wrongdoing to TNRCC.

### 3. Kevin Catron's Claims Based on the Water Quality Reports

#### a. Violation of Law

 The City argues that the evidence is insufficient to prove that Kevin's report to TNRCC addressed violations proven to have any probable adverse effect on the

---

**20.** Tex. Gov't Code Ann. § 554.002(b); *Needham,* 45 Tex. Sup.Ct. J. at 635, 2002 WL 924463, at *6.

**21.** *Needham,* 45 Tex. Sup.Ct. J. at 636, 2002 WL 924463, at *6–7.

**22.** *Id.*

**23.** *Id.*

public good. Further, the City argues that Kevin was "simply doing his job" when he sent TNRCC his chlorine report and that DeLeon already had the information anyway. These contentions lack merit.

Under the Whistleblower Act, a law is a statute, a local ordinance, or a rule adopted under a statute or ordinance.[24] A "violation of law" under the act has been held "to include any disclosure of information tending to directly or circumstantially prove a violation of the law."[25] The Whistleblower Act is directed at public employers' violations of law that are detrimental to the welfare of the public.[26] The TNRCC is the state agency charged with assuring compliance with state regulations concerning the safety of the water supply.[27]

The evidence at trial showed that Kevin reported to DeLeon at the TNRCC that samples of the City's water supply contained low or no chlorine and that he had been asked to conceal that information from TNRCC by falsifying a report. The record further demonstrates that Kevin told DeLeon about some sites that should be tested for low or no chlorine. We hold that the evidence was legally and factually sufficient to prove that Kevin's report concerned violations that had a probable adverse effect on the public good. We overrule this ground.

### b. Causation

Additionally, the City argues that the evidence is legally and factually insufficient to show that Kevin was fired because of his reports to the TNRCC of the City's violations. The City claims that Dickason made the decision to terminate based on an independent report that Kevin had mishandled the water plant's operation and showed poor leadership.

To show causation under the Whistleblower Act, a public employee must show that after he made a good faith report of a violation of law to an appropriate law enforcement authority, his employer retaliated against him because of the report.[28] Circumstantial evidence alone may be sufficient.[29]

Such evidence includes: (1) knowledge of the report of illegal conduct, (2) expression of a negative attitude toward the employee's report of the conduct, (3) failure to adhere to established company policies regarding employment decisions, (4) discriminatory treatment in comparison to similarly situated employees, and (5) evidence that the stated reason for the adverse employment action was false.[30]

The evidence shows that Dickason knew that Kevin had tried to discuss the water

**24.** TEX. GOV'T CODE ANN. § 554.001(1) (Vernon Supp.2002).

**25.** *Castaneda v. Tex. Dep't of Agric.*, 831 S.W.2d 501, 505 (Tex.App.-Corpus Christi 1992, writ denied).

**26.** *City of Cockrell Hill v. Johnson*, 48 S.W.3d 887, 896 (Tex.App.-Fort Worth 2001, pet. denied); *Stinnett v. Williamson County Sheriff's Dep't*, 858 S.W.2d 573, 575 (Tex.App.-Austin 1993, writ denied).

**27.** TEX. WATER CODE ANN. § 26.127(a) (Vernon 2000); *Southwest Travis County Water Dist. v. City of Austin*, 64 S.W.3d 25, 27 (Tex.App.-

Austin 2000, no pet.); *City of Brenham v. Honerkamp*, 950 S.W.2d 760, 764–65 (Tex. App.-Austin 1997, pet. denied); *see* also TEX. WATER CODE ANN. §§ 13.041, 13.132, 13.133 (Vernon 2000) (all discussing powers of TNRCC).

**28.** *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex.2000).

**29.** *Id.* at 69.

**30.** *Id.*

quality problems with the City Manager and that he had called TNRCC about the City not accurately reporting information on water quality. The evidence further shows that Dickason threatened Kevin in a memorandum for going outside the chain of command after he tried to report the order he had received to falsify documents to the City Manager. Tammy Sinclair, who was in the meeting in which the decision to fire Kevin was made, remembered that he was not a "team leader" but was unable to cite any specific examples of his poor leadership skills.

We hold that the evidence was legally and factually sufficient to show that Kevin's report to TNRCC was a cause of his termination. We therefore overrule this ground. Because of our holdings that the evidence was legally and factually sufficient to prove both a violation of law and causation, we hold that the evidence was legally and factually sufficient to support the jury's finding that Kevin had "reported a possible violation of the law in good faith to an appropriate law enforcement authority" and that the report was "a cause of the city suspending or discharging him." We overrule the City's third issue on these grounds.

### C. Jury Charge

█ In its fourth issue, the City argues that the trial court gave the jury an erroneous definition of "appropriate law enforcement authority." The trial court expanded the statutory definition of law enforcement authority to include "a supervisor of the employee ... having the power and duty of inquiring into the lawfulness of the questioned conduct or who is otherwise authorized to take remedial action with respect to the alleged violation." Kevin argues that the City's objection failed to preserve error. We agree.

The objection was:

Defendants object to the Court's failure to use the defendant's proposed instruction No. 5 regarding what is an appropriate law enforcement authority, and that the proposal used by the Court does not, again, clearly delineate all of the required elements of what constitutes an appropriate law enforcement authority, leaving too much confusion on the part of the jury.

The proposed instruction submitted by the City provided:

APPROPRIATE LAW ENFORCEMENT AUTHORITY

You are instructed that an "appropriate law enforcement authority" as those words are used in these instructions includes not only any public authority having the power and duty of inquiring into the lawfulness of the questioned conduct and causing its cessation if the conduct appears to be in violation of the law, but also any other civil authority having powers and duties sufficient to compel obedience to what the law requires in a particular case.

More specifically, in order to be "an appropriate law enforcement authority," the person to whom a report is made must have either:

(1) The power and duty under the law to decide disputes concerning the lawfulness of the matter being reported;

(2) The power and duty to order a halt or change in the matter reported;

(3) The power to legislate or regulate with respect to the matter being reported; or

(4) The power to arrest, prosecute, or otherwise discipline on account of an alleged violation being reported.

Texas Rule of Civil Procedure 274 provides that "[a] party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a . . . definition . . . on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections."[31] The Supreme Court of Texas has announced that the test for determining whether error in the jury charge has been preserved is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling.[32] We hold that the City's objection to the definition failed to clearly direct the trial court's attention to the problems with the definition.

Additionally, when liability is asserted based upon a provision of a statute or regulation, a jury charge should track the language of the provision as closely as possible.[33] "Failure to submit a definition . . . shall not be deemed a ground for reversal of the judgment unless a substantially correct definition . . . has been requested in writing and tendered by the party complaining of the judgment."[34]

The proposed definition submitted by the City is not substantially correct because it does not track the statute.[35] Instead, it tracks the language of *City of Dallas v. Moreau.*[36] That opinion was based on the prior Whistleblower Act, which did not define "appropriate law enforcement authority." The definition from *Moreau* was specifically disapproved in *Needham.*[37] The proposed definition thus "expands the statutory definition to include an employer's general obligation to internally discipline its own employees."[38] Because the objection was not clear enough to preserve error and the proposed definition was not a substantially correct statement of the law, we hold that the City has waived any error concerning the jury charge. We therefore overrule the City's fourth issue.

## D. Attorneys' Fees

In its final issue, the City complains that the jury's attorney's fee award is a percentage of recovery and excessive. The City further complains that the trial court erred in denying its motion to reduce attorney's fees.

Factors that a jury considers when determining a reasonable attorney's fee award include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

31. TEX.R. CIV P. 274.

32. *State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 241 (Tex.1992) (op. on reh'g); *see also Wal–Mart Stores, Inc. v. McKenzie,* 997 S.W.2d 278, 280 (Tex.1999); *Holland v. Wal–Mart Stores, Inc.,* 1 S.W.3d 91, 94 (Tex.1999).

33. *Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex.1994); *Brown v. Am. Transfer & Storage Co.,* 601 S.W.2d 931, 937

(Tex.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980).

34. TEX.R. CIV. P. 278.

35. *See* TEX GOV'T CODE ANN. § 554.002(b).

36. 697 S.W.2d 472, 474 (Tex.App.-Dallas 1985, no writ).

37. 45 Tex. Sup.Ct. J. at 634, 2002 WL 924463, at *5.

38. *Id.*

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.[39]

The evidence shows that Susan Hutchison, one of Kevin's lawyers, testified about:

- the background, experience, and reputation of Kevin's counsel;
- the time and labor involved in trial preparation and trial;
- cases the lawyers could not accept because of Kevin's case;
- usual and customary fees; and
- contingent fee agreements and the risk involved.

Additionally, the record shows that the jury questions included an instruction outlining the factors. Finally, the record shows that the attorneys requested a specific amount in attorney's fees and that the jury awarded a smaller, specific amount. We therefore hold that the attorney's fees are reasonable. We overrule the City's fifth issue.

Because of our holdings on the City's issues related to Kevin's retaliation claims based on the water quality reports, we affirm the trial court's judgment in favor of Kevin Catron and against the City in all respects except the issue of prejudgment interest.

## Prejudgment Interest

In one cross point, Kevin argues that the trial court erred by failing to include prejudgment interest on his award for lost wages and employment benefits. We agree.

The Whistleblower Act provides that public employees who lose their jobs in violation of section 554.002 may sue for actual damages.[40] The term "actual damages" is not defined by the statute. In *Robertson County v. Wymola*, the Austin Court of Appeals upheld an award of prejudgment interest under the former Whistleblower statute.[41] That court's analysis is helpful here:

> In the absence of a statutory definition of "actual damages," we look to the common law measure of damages.
>
> The purpose of awarding actual damages has always been to compensate the injured plaintiff, and a law that denies recovery of pre-judgment interest frustrates this goal. If a judgment is limited to the amount of damages sustained at the time of the incident, plaintiffs are not fully compensated.... In this case, the trial court awarded Wymola prejudgment interest for the period between the filing of her claim and the time of judgment. Such interest was intended to put Wymola as close as possible to the position she would have oc-

**39.** *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997)(quoting TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G app. STATE BAR RULES, art. X, § 9); *see also Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex.1990).

**40.** TEX. GOV'T CODE ANN. § 554.003(2) (Vernon Supp.2002).

**41.** 17 S.W.3d 334, 343–44 (Tex.App.-Austin 2000, pet. denied).

cupied but for the defendant's wrong by compensating her for the fact that during the pendency of the case she was denied the opportunity to use and invest her damages. Because an award of prejudgment interest attempts to put a plaintiff back into her pre-injury position, we believe pre-judgment interest is properly a component of actual damages for which immunity has clearly been waived by the Whistleblower Act.[42]

We agree with the Austin Court of Appeals's analysis and hold that the trial court erred in excluding prejudgment interest on Kevin's award for lost wages and employment benefits. We therefore sustain his sole cross-issue.

We reverse the trial court's judgment regarding Kevin Catron on the issue of prejudgment interest only and render judgment that Kevin Catron receive prejudgment interest on his award for lost wages and employment benefits from the filing date of his petition until the date of the trial court's final judgment and that the prejudgment interest shall be computed as simple interest at the same rate as postjudgment interest.[43] We remand this cause to the trial court for the computation of that amount.

### III. CONCLUSION

Because the trial court lacked jurisdiction over Kelli Catron's claims, we reverse the trial court's judgment regarding Kelli Catron and render judgment that she take nothing. We affirm the trial court's judgment in favor of Kevin Catron and against the City in all respects except the denial of prejudgment interest. We reverse the trial court's judgment regarding Kevin Catron on the issue of prejudgment interest only and render judgment that Kevin Ca-

tron receive prejudgment interest on his award for lost wages and employment benefits. Finally, we remand this cause to the trial court solely for the computation of that prejudgment interest.

---

**42.** *Id.* (citations omitted).

**43.** *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 531–32 (Tex.1998).