COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-450-CV
 
 
 
DOROTHY 
FETHKENHER                                                        APPELLANT
 
V.
 
THE 
KROGER CO.                                                                     APPELLEE
 
 
------------
 
FROM 
THE 355TH DISTRICT COURT OF HOOD COUNTY
 
------------
 
OPINION
 
------------
I. Factual and 
Procedural Background
        An 
automatic door struck Appellant Dorothy Fethkenher as she was exiting a Kroger 
store in Granbury, Texas on September 13, 1999.  Appellant reported the 
incident to Kroger and went home, where she treated injuries to her head, right 
hand, and right arm with ice and over-the-counter pain medicine.  The 
following day, Appellant went to a hospital emergency room, seeking medical 
attention for pain and swelling in her right hand and arm.  After x-rays 
revealed no broken bones, the emergency room doctor referred Appellant to an 
osteopathic doctor, who in turn referred her to a physical therapist.  When 
Appellant’s condition did not improve with therapy, she sought a second 
opinion from Dr. Robert Protzman, an orthopedic surgeon.  After a course of 
more conservative treatment failed, Appellant underwent three separate surgeries 
to eliminate pain and other problems, including ulnar nerve surgery on both her left 
and right arms and endoscopic carpal tunnel release on her right wrist.
        Appellant 
sued Appellee The Kroger Co. for negligence seeking damages for the cost of 
medical care, pain and suffering, impairment, and disfigurement.  Appellee 
denied liability and alleged a number of defenses to Appellant’s claims.  
In connection with the suit, Appellant sent Kroger an interrogatory that 
included a request that Kroger describe “any previous incidents pertaining to 
automatic door malfunction at The Kroger Co. stores during the last ten (10) 
years, from 1989 through 1999.”  Appellee, noting that it operates over 
2,500 grocery stores in more than thirty states, objected to this request as 
being overly broad, unduly burdensome, and not reasonably calculated to lead to 
the discovery of admissible evidence.  Appellee confirmed, however, that it 
had no knowledge of any incidents involving the doors at the Granbury store in 
the two years prior to Appellant’s incident.  Appellant filed a motion to 
compel, asking the trial court to order more complete responses to her discovery 
requests.
        At 
the hearing on Appellant’s motion, Appellee argued that because it had a 
two-year document retention policy, it was not possible to produce information 
for the last ten years.  The trial court limited Appellant’s request and 
ordered Appellee to produce documents related only to the particular door at the 
store where the incident occurred for the period dating back to the installation 
of the doors, approximately three or four years.  In response, Appellant 
asked the trial court to consider modifying the discovery order to include all 
of the doors in Appellee’s southwest region rather than only the door in 
question.  The trial court declined to expand the discovery order to the 
188-store region and reiterated Appellee’s obligation to produce documents 
relating only to the specific door involved in the incident.
        Throughout 
this case, the parties’ attorneys demonstrated an acrimonious working 
relationship and an inability to conduct discovery without court 
intervention.  The record is replete with accusatory letters from both 
sides, three motions to compel, and five separate motions for sanctions—two 
from the Appellant and three from the Appellee.  On September 27, 2002, 
Appellee filed its second motion for sanctions against Appellant’s counsel 
under Texas Rules of Civil Procedure 215.1 and 215.2.  Claiming several 
justifications for the imposition of sanctions, Appellee asked the court to fine 
Appellant’s counsel $2,967.25. Appellee’s motion for sanctions requested 
relief based on allegations that Appellant’s counsel:

1)Refused 
to produce Appellant for deposition.
 
2)Refused 
to attempt an agreed proposed order regarding the trial court’s rulings on a 
previous motion to compel.
 
3)Refused 
to non-suit a Kroger store manager that did not work at the Granbury store at 
the time of the incident, as previously promised by Appellant’s attorney.
 
4)Refused 
to confer on Appellee’s motion to compel. Specifically, Appellant’s counsel 
failed to respond to two letters asking for supplemental discovery responses.

Appellee 
attached numerous exhibits to the motion consisting primarily of correspondence 
between the parties’ attorneys.  Appellant’s response, filed on October 
7, 2002, notified the court that her deposition was noticed by Appellee for 
October 15, 2002.
        At 
the hearing on the motion, Appellee urged the court to sanction Appellant’s 
counsel for the reasons set forth in the sanctions motion as well as for new 
allegations.  According to Appellee, Appellant’s counsel misrepresented 
that she was subject to a trial setting in Dallas County that conflicted with 
the sanctions hearing in Hood County.  Appellee informed the court that she 
called the court in Dallas County to confirm the conflict and discovered that 
Appellant’s counsel was not, in fact, called to trial.  Claiming a lack 
of candor to the court and opposing counsel, Appellee increased its request for 
sanctions to $5,000.
        Appellant’s 
counsel informed the trial court that the court in Dallas County notified her 
that she was on one-hour standby to appear at trial.  As explained by 
Appellant’s counsel, the Dallas court has a list of cases that are to be heard 
during a given week, and all cases on that list are on standby.  Even 
though a case from the prior week was carried over, the court’s instruction 
that Appellant’s counsel remain on one-hour standby did not change.  The 
trial court granted Appellee’s motion “as a result of the various activities 
as set forth in the motion and as developed through the letters that are before 
the court,” and ordered $1,500 in sanctions.
        A 
trial was held on the merits of Appellant’s case in November 2002.  Garry 
DeLong, the store manager, testified at length about the doors.  He 
explained that the doors appeared to be functioning normally immediately before 
and after the incident. DeLong attempted to get the door to improperly close 
again, but was unable to recreate the incident.  With the help of a door 
repairman, DeLong again attempted to recreate the incident to no avail.  
According to DeLong, the repairman did not discover any malfunction and 
consequently did not make repairs to the door.  Gail Maples, the former 
front-end manager, and Betty Jean Daughrity, the current front-end manager, 
testified that no one ever reported any previous problems regarding the doors 
closing on people.  Several repair records and work orders admitted into 
evidence showed no problems of a similar nature that would cause the doors to 
improperly shut on people.
        At 
the close of evidence, the jury was charged with determining whether the 
negligence of either or both parties proximately caused the occurrence.  
The jury charge included the following additional instructions:
 
An 
owner or occupier of a premises is not an insurer of the safety of its invitees.
 
An 
occurrence may be an “unavoidable accident,” that is, an event not 
proximately caused by the negligence of any party to it.
 
. 
. . .
 
In 
order to establish that THE KROGER CO. “reasonably should have known of the 
danger[,]” there must be some proof of how long the hazard existed prior to 
the incident in question.

        The 
jury returned a verdict in favor of Appellee and the trial court rendered a 
take-nothing judgment against Appellant.  In three issues, Appellant argues 
that the trial court erred: 1) in limiting her discovery regarding other 
automatic door-related injuries at Kroger stores; 2) in allowing unnecessary 
jury instructions that constituted impermissible comments on the weight of the 
evidence; and 3) in sanctioning Appellant’s counsel.  We affirm in part 
and reverse and render in part.
II. Discussion
        A. 
Discovery
        In 
her first issue, Appellant contends that the trial court erred in limiting her 
discovery regarding automatic doors to only the door involved in the accident 
because she was entitled to information pertaining to all automatic doors in 
every Kroger store over a ten-year period, as she requested in her 
interrogatory.  We review discovery rulings for an abuse of discretion. In 
re CSX Corp., 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding).  A 
trial court abuses its discretion when it acts without reference to guiding 
rules and principles.  In re Colonial Pipeline Co., 968 S.W.2d 938, 
941 (Tex. 1998) (orig. proceeding).  Although the scope of discovery is 
broad, it is limited by the legitimate interests of the opposing party to avoid 
overly broad requests, harassment, or disclosure of privileged information. In 
re Am. Optical Corp., 988 S.W.2d 711, 713 (Tex. 1998) (orig. 
proceeding).  A central consideration in determining overbreadth is whether 
discovery requests could have been more narrowly tailored.  CSX, 124 
S.W.3d at 153.  Discovery may not be used as a fishing expedition or to 
impose unreasonable expenses on the opposing party.  K Mart Corp. v. 
Sanderson, 937 S.W.2d 429, 431 (Tex. 1996) (orig. proceeding).
        The 
discovery request at issue, Appellant’s interrogatory, asked Appellee to 
describe, in detail, any previous incidents pertaining to automatic door 
malfunctions at over 2,500 Kroger stores during the preceding ten years.  
The Texas Supreme Court has, on many occasions, held that requests like this are 
overly broad as a matter of law.  CSX, 124 S.W.3d at 153 (stating 
that request to identify all safety employees who worked for defendant over a 
thirty-year period qualifies as a “fishing expedition”); K Mart, 937 
S.W.2d at 431 (holding that request for information relating to all criminal 
activity on all K Mart property over last seven years was overbroad); Dillard 
Dep’t Stores, Inc. v. Hall, 909 S.W.2d 491, 492 (Tex. 1995) (orig. 
proceeding) (stating that a 227 store search in twenty states for documents over 
a five-year period is overly broad as a matter of law).  Although 
Appellant’s request to narrow her scope of discovery to the 188 stores in 
Kroger’s southwest region significantly reduced her original request for 
information regarding over 2,500 stores, Appellant failed to narrow the request 
in a manner that would heighten its relevancy.  Appellant did not tailor 
her discovery to a particular type of door or sensor or even a particular manner 
of malfunction, which might have made it easier to establish that the request is 
reasonably calculated to lead to the discovery of admissible evidence.  As 
written, Appellant’s request appears to be a “fishing expedition” for 
information regarding potential problems with automatic doors in general.
        Furthermore, 
Appellant’s request is unduly burdensome.  Texas discovery rules 
encourage trial courts to limit discovery when the burden or expense of the 
proposed discovery outweighs its likely benefit, taking into account the needs 
of the case, the amount in controversy, the parties’ resources, the importance 
of the issues at stake in the litigation, and the importance of the proposed 
discovery in resolving the issues.  In re Alford Chevrolet-Geo, 997 
S.W.2d 173, 181 (Tex. 1999) (orig. proceeding) (citing Tex. R. Civ. P. 192.4(b)). Appellee 
provided the affidavit of Georgia Waitkus, a claims specialist in its risk 
management department, which stated that it would take between 376 and 564 hours 
of manpower to gather information for just one of its seventeen regional 
divisions.  Recognizing that the scope of discovery is largely within the 
discretion of the trial court, we conclude that the trial court did not abuse 
its discretion in limiting Appellant’s request to the door in question over a 
three or four-year period. See CSX, 124 S.W.3d at 152. We overrule 
Appellant’s first issue.
        B. 
Jury Instructions
        Appellant, 
in her second issue, argues that the trial court’s jury charge included 
unnecessary and impermissible instructions to the jury.  We review a jury 
charge under an abuse of discretion standard. In re J.T.G., 121 S.W.3d 
117, 128 (Tex. App.—Fort Worth 2003, no pet.).  Pursuant to the Texas 
Rules of Civil Procedure, a trial court is required to submit “such 
instructions and definitions as shall be proper to enable the jury to render a 
verdict.”  Tex. R. Civ. P. 
277.  Trial courts are afforded considerable discretion in deciding what 
instructions are necessary and proper in submitting issues to the jury.  State 
Farm Lloyds v. Nicolau, 951 S.W.2d 444, 451 (Tex. 1997).  For an 
instruction to be proper, it must (1) assist the jury, (2) accurately state the 
law, and (3) find support in the pleadings and the evidence.  Tex. 
Workers' Comp. Ins. Fund v. Mandlbauer, 34 S.W.3d 909, 912 (Tex. 2000).
        Error 
in a jury charge is reversible only if it probably caused the rendition of an 
improper judgment or probably prevented the appellant from properly presenting 
the case on appeal.  In re D.I.B., 988 S.W.2d 753, 756 & n.10 
(Tex. 1999); see Tex. R. App. P. 
44.1(a).  To preserve a complaint premised on the jury charge for appellate 
review, a party must point out distinctly the objectionable matter and the 
grounds for the objection. Tex. R. Civ. P. 274.  The test for 
preservation of a jury charge complaint is whether the party made the trial 
court aware of the complaint, timely and plainly, and obtained a ruling.  Tex. R. App. P. 33.1(a); see State 
Dep’t of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 
1992) (op. on reh’g).
                1. 
“Not an insurer” instruction
        Appellant 
first challenges the trial court’s jury instruction that an owner or occupier 
of a premises is not an insurer of the safety of its invitees, arguing that it 
constituted an improper comment on the weight of the evidence.  At trial, 
Appellant objected to the “owner is not an insurer” instruction as follows:

We 
object to, I guess, the instruction an owner or occupier of the premises not an 
[i]nsurer of the safety of its invitees -- that is taken from the Reese case, 
and it’s a -- I mean, the Texas Supreme Court case where they are just saying 
where there is a third party who has been negligent -- that obviously the 
occupier of premises not an [i]nsurer of the safety of its invitees, it is not 
intended and [is not] to be used as pattern jury charges for the jury. It’s 
for appellate purposes for the general rule as far as premises liability. It’s 
never been, to my knowledge, used in a premise case as far as a charge to the 
jury.

Appellee 
contends that Appellant’s objection on appeal that the instruction is an 
improper comment on the weight of the evidence differs substantially from the 
objection she made at trial.
        Although 
the Texas Supreme Court has held that we should concern ourselves with common 
sense and refrain from promoting form over substance, objecting parties must 
nevertheless make the trial court aware of the complaint, timely and 
plainly.  Payne, 838 S.W.2d at 241.  In Willis v. Donnelly, 
Houston’s Fourteenth Court of Appeals addressed the Willises’ objection to 
the trial court’s instruction that a fiduciary duty existed because the 
existence of a fiduciary duty is a question of fact for the jury.  118 
S.W.3d 10, 33-34 (Tex. App.—Houston [14th Dist.] 2003, no pet.).  In that 
case, the Willises objected to the instruction for two reasons.  Id. 
at 33.  First, that there was no evidence to support the submission of the 
issue.  Id.  Second, that as a matter of law, there was no 
fiduciary duty.  Id.  The court concluded that the Willises’ 
objections were insufficient to alert the trial court that the existence of a 
fiduciary relationship was a fact question for the jury and held that any error 
in the jury charge was not preserved. Id. at 34.
        Here, 
Appellant objected to the “not an insurer” instruction on two grounds—that 
it is an incorrect statement of the law and that it is not intended as a pattern 
jury charge.  Appellee points out that Appellant did not refer to the 
instruction as a “comment” or as affecting the weight of the evidence, nor 
suggest it might improperly persuade, nudge, or prejudice the jury.  Thus, 
Appellee argues, the trial court likely understood Appellant’s objection as 
being that the instruction was an incorrect statement of the law and not 
intended as a pattern jury charge.  We agree.  Appellant’s 
objections did not serve to make the trial court aware of her complaint that the 
instruction is an impermissible comment on the weight of the evidence and she 
therefore waived her right to raise this issue on appeal.  See id.; see 
City of Weatherford v. Catron, 83 S.W.3d 261, 272 (Tex. App.—Fort Worth 
2002, no pet.); El Paso Refining, Inc. v. Scurlock Permian Corp., 77 
S.W.3d 374, 386 (Tex. App.—El Paso 2002, pet. denied) (op. on reh’g).
                2. “Unavoidable 
Accident” Instruction
        Appellant 
additionally challenges the trial court’s instruction that, “[a]n occurrence 
may be an ‘unavoidable accident.’”  An unavoidable accident is “an 
event not proximately caused by the negligence of any party to it.”  Reinhart 
v. Young, 906 S.W.2d 471, 472 (Tex. 1995); Tanner v. Karnavas, 86 
S.W.3d 737, 740 (Tex. App.—Dallas 2002, pet. denied).  The purpose of an 
unavoidable accident instruction is to ensure that jurors will understand that 
they do not necessarily have to find that one of the parties is to blame for the 
occurrence.  Reinhart, 906 S.W.2d at 472.  The instruction is 
proper only when there is evidence that the event was proximately caused by a 
nonhuman condition and not by the negligence of any party to the event. Hill 
v. Winn Dixie Tex., Inc., 849 S.W.2d 802, 803 (Tex. 1992).  It 
is most often used to inquire about the causal effect of some physical condition 
or circumstance such as fog, snow, sleet, wet or slick pavement, or obstruction 
of view.  Reinhart, 906 S.W.2d at 472. When there is no evidence 
that the accident was caused by some such peculiar circumstance, submission of 
the instruction is generally improper. See Hicks v. Brown, 136 Tex. 399, 
151 S.W.2d 790, 792 (1941).  The Texas Supreme Court has stated that courts 
should refrain from submitting an unavoidable accident instruction due to the 
risk that the instruction will confuse or mislead the jury.  Reinhart, 
906 S.W.2d at 472; Hill, 849 S.W.2d at 803.  In fact, several 
justices have expressed that they would like to see the instruction all together 
abolished in Texas.  See Reinhart, 906 S.W.2d at 477 (Enoch, J. 
concurring); see also id. at 477-78 (Hightower, J. dissenting, joined by 
Cornyn, J. and Gammage, J.).
        Appellant 
objected to the unavoidable accident instruction at trial as an improper comment 
on the weight of the evidence, stating:

I 
believe that is a comment on the evidence because basically, Your Honor, you are 
asking whether or not the negligence of any of those named below caused the 
incident. If not, then they would answer so.
But 
to also express the occurrence may be an unavoidable accident that is not caused 
by the negligence of any party, I believe, is a comment on the evidence.
 
        In 
her appellate brief, Appellant states that an unavoidable accident instruction 
is disfavored “because of the message it sends to the jury” and “it 
essentially tells the jury that the event in question is nobody’s 
fault.”  Appellee claims that Appellant waived this complaint because it 
differs from her objections at trial.  As characterized by Appellee, 
Appellant’s argument on appeal is that the instruction is unsupported by the 
evidence, rather than that the instruction was an improper comment on the weight 
of the evidence.  Thus, according to Appellee, Appellant cannot, for the 
first time on appeal, argue that the instruction is not supported by the 
evidence because her objection at trial did not plainly make the trial court 
aware that this was her objection.
        A 
review of Appellant’s brief leads us to conclude that Appellant’s argument 
on appeal is that the unavoidable accident instruction was an impermissible 
comment on the evidence because the instruction was unsupported by the 
evidence.  Furthermore, the cases cited by Appellant in support of her 
argument address unavoidable accident instructions that constitute impermissible 
comments on the weight of the evidence because they are unsupported by the 
evidence.  See Lemos v. Montez, 680 S.W.2d 798, 801 (Tex. 1984); Otis 
Elevator Co. v. Shows, 822 S.W.2d 59, 61 (Tex. App.—Houston [1st Dist.] 
1991, writ denied).  Thus, we conclude that Appellant’s objections do not 
differ from her complaints on appeal, and we will address her complaint.
        An 
extensive review of the record reflects that there is no evidence that the 
automatic door’s malfunction was proximately caused by a nonhuman event.  
See Hill, 849 S.W.2d at 803.  Appellee argues that it produced 
sufficient evidence to support the instruction, relying solely on the following 
testimony of Robert Hamilton, Appellee’s assistant risk manager:

Q. 
[Appellee’s attorney] Is the door supposed to close on customers?
 
A. 
I don’t think it’s designed to do that, no. I know I get pages on my pagers 
sometimes that don’t have numbers and have hieroglyphics, and I don’t think 
there’s anything necessarily faulty with my pager. I think it’s more of an 
electronic anomaly. I know and I have heard of that from time to time. The [sun] 
can cause havoc with sensors, and there’s reflection off of windshields, off a 
piece of jewelry or whatever. . . . If there is some [type] of glitch in the 
electricity supplied at a door, that could cause something to go. I don’t 
think that’s, again, a malfunction necessarily of the door. I think there’s 
sometimes outside interference factors.
 
Q. 
Do you know of any outside interference factors in this particular case on 
September 13th, 1999?
 
A. 
No.

Appellee, 
during closing argument, again identified plausible causes for the door’s 
malfunction that might be construed as nonhuman events, including a “bleep in 
the electricity supply” and a reflection off of a windshield.  Although 
these theories regarding the door’s malfunction might be construed as nonhuman 
events, Appellee did not provide any affirmative evidence whatsoever that the 
door’s malfunction was proximately caused by any of these theories.  In 
the absence of any affirmative evidence, we conclude that the instruction 
regarding unavoidable accidents was improper.  See Hill, 849 
S.W.2d at 803.  Having concluded that the unavoidable accident instruction 
was improper, we must now address whether the trial court committed reversible 
error.
        Error 
in the jury charge is reversible only if, in light of the entire record, it 
probably caused the rendition of an improper judgment or probably prevented 
Appellant from properly presenting her case to the court of appeals. Tex. R. App. P. 44.1(a).  Appellant 
relies on Urista v. Bed, Bath, & Beyond, Inc., to support her 
contention that the trial court’s inclusion of the unavoidable accident 
instruction was reversible error.  No. 01-02-00150-CV, 2004 WL 306009 (Tex. 
App.—Houston [1st Dist.] Feb. 19, 2004, no pet.) (op. on reh’g).  In 
that case, the jury was charged with a general negligence question accompanied 
with an unavoidable accident instruction identical to the one given in the case 
at hand.  Id. at *1.  On appeal, the majority held that 
because there was nothing in the record supporting an unavoidable accident, the 
instruction was improper.  Id. at *3.  In concluding that the 
error was reversible, the court questioned the sufficiency of the evidence in 
support of the verdict and specifically noted two factors that affected its 
decision.  Id. at *4.  First, the court remarked that the 
defendant’s reliance on an “accidents happen” theory during trial likely 
caused the jury to be influenced by the erroneous instruction, which 
specifically mentions accidents.  Id.  Second, the court 
recognized that two jurors would not have found the defendant guilty of 
negligence and noted that “[a]n incorrect instruction is especially likely to 
cause reversible error when the evidence is conflicting and the issues hotly 
contested.”  Id. at *3.
        We 
conclude that the facts in the case at hand are distinguishable and more akin to 
those in Reinhart.  In Reinhart, the Texas Supreme Court held 
that the trial court’s error in submitting an unavoidable accident instruction 
was harmless error, stating that:

No 
evidence in this case even remotely suggests that the unavoidable accident 
instruction in any way caused the case to be decided differently than it would 
have been without it.

 
906 
S.W.2d at 472; see also Hill, 849 S.W.2d at 803 (holding that an 
erroneous unavoidable accident instruction did not warrant reversal).  In 
the instant case, like in Reinhart, liability was not closely 
contested.  Appellee secured a unanimous jury verdict of no liability, and 
the record demonstrates that the jury did not ask any questions about the 
instruction or its role in their deliberations.  See Reinhart, 906 
S.W.2d at 473-74.  Further, Appellant’s burden to establish that Appellee 
knew or should have known of the alleged hazard was not met.  Consequently, 
under the circumstances of this particular case, we conclude that it is not 
likely that the erroneous unavoidable accident instruction caused the rendition 
of an improper judgment.
                3. 
“Time of Hazard” Instruction
        Finally, 
Appellant contends that the instruction requiring the jury to find proof of how 
long the hazard existed prior to the incident in question was prejudicial and 
improper for several reasons. Appellant argues that the instruction is 1) an 
incorrect statement of the law, 2) unnecessarily duplicative, and 3) contradicts 
the res ipsa loquitur instruction, which allowed the jury to find 
Appellee negligent, even in the absence of direct evidence.  We first note 
that because Appellant’s only objection to this instruction at trial was that 
it was an incorrect statement of the law, we will not address whether the 
instruction was unnecessarily duplicative or contradicted the res ipsa 
loquitur instruction.  See Tex. R. App. P. 33.1(a); Payne, 
838 S.W.2d at 241.  Secondly, Appellant’s argument is inadequately 
briefed, as it fails to cite any legal authority for the proposition that the 
instruction is an incorrect statement of the law.  Tex. R. App. P. 38.1(h); see Fredonia 
State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994).  
Therefore Appellant presents nothing for review regarding the “time of 
hazard” instruction.
        Having 
addressed all of Appellant’s arguments regarding the jury instructions in 
favor of Appellee, we overrule Appellant’s second issue.
        C. 
Sanctions
        Appellant’s 
final contention on appeal is that the court erred in imposing sanctions on 
Appellant’s attorney.  A trial court’s sanctions award is reviewed for 
abuse of discretion.  Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 
1992) (orig. proceeding).  Discovery sanctions serve three purposes: 1) to 
secure the parties' compliance with the discovery rules; 2) to deter other 
litigants from violating the discovery rules; and 3) to punish parties who 
violate the discovery rules.  McRae v. Guinn Flying Serv., 778 
S.W.2d 189, 191 (Tex. App.—Houston [1st Dist.] 1989, no writ).  Although 
the choice of sanctions under Rule 215 is left to the sound discretion of the 
trial judge, the sanctions imposed must be just. Tex. R. Civ. P. 215.2; Wal-Mart 
Stores, Inc. v. Butler, 41 S.W.3d 816, 817 (Tex. App.—Dallas 2001, no 
pet.).  There are certain limitations on a trial judge's power to impose 
sanctions for discovery abuse.  First, the sanction must bear a direct 
relationship to the offensive conduct. TransAmerican Natural Gas Corp. v. 
Powell, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding).  Second, 
the sanction must not be excessive; it should be no more severe than necessary 
to satisfy its legitimate purposes.  Id.  In considering 
whether sanctions are just, we review the entire record, including the evidence, 
arguments of counsel, written discovery on file, and the circumstances 
surrounding the parties' discovery abuse.  Daniel v. Kelley Oil Corp., 
981 S.W.2d 230, 234 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (op. on 
reh’g).
        Appellant 
first argues that any sanctions attributable to Appellee’s alleged 
misrepresentation regarding a conflicting trial in Dallas County are improper 
because Appellee’s motion did not mention this accusation, and Appellant had 
no notice that Appellee would seek sanctions for this act.  The record, 
however, does not demonstrate that any portion of the sanctions ordered by the 
trial court resulted from this allegation.  The trial court specifically 
stated at the hearing that the motion was granted “as a result of the various 
activities as set forth in the motion and as developed through the letters that 
are before the court.”[1]  Thus, we need not 
address whether Appellant received timely notice of Appellee’s allegations 
regarding the hearing conflict.
        We 
further note that Appellee’s second motion for sanctions cited civil Rules 
215.1(d) and 215.2(b) as a basis for entitlement to sanctions relief, both of 
which apply to discovery abuse.  Tex. 
R. Civ. P. 215.1(d), 215.2(b).  Notably, two of the allegations made 
by Appellee in the motion do not provide a basis for awarding sanctions under 
Rule 215:
 
1) 
Appellant’s refusal to attempt an agreed proposed order regarding the trial 
court’s rulings on a previous motion to compel.

2) 
Appellant’s refusal to non-suit a Kroger store manager that did not work at 
the Granbury store at the time of the incident, as previously promised by 
Appellant’s attorney.

 
This 
leaves only two allegations that are sanctionable under Rule 215.1(d) or 
215.2(b).  First, is the alleged failure of Appellant’s attorney to 
produce Appellant for deposition.  Second, is Appellee’s contention that 
Appellant’s counsel failed to respond to two letters asking for supplemental 
discovery responses.
        In 
reviewing the entire record, including the evidence, arguments of counsel, 
written discovery on file, and the circumstances surrounding the deposition of 
Appellant, we conclude that the $1,500 sanctions award was not warranted.  
The parties’ attorneys maintained a contentious working relationship 
throughout this dispute as evidenced by their interaction in setting a 
deposition date for Appellant.  In a series of letters between the parties, 
a pattern of uncooperative behavior is evidenced from both sides.
        According 
to the exhibits attached to the motion for sanctions, Appellee’s first written 
request to depose Appellant was on July 19, 2002.  The letter simply 
requested Appellant to apprise Appellee of dates the Appellant was available for 
deposition.  In her response letter, dated July 23, 2002, Appellant’s 
counsel stated that because Appellee wholly failed to provide Appellant with any 
meaningful discovery, she would refuse to make her client available for 
deposition until after the court’s ruling on her motion to compel, scheduled 
on August 15, 2002.  On August 7, 2002, Appellee sent a notice of intention 
to take the oral deposition of Appellant on August 14, 2002, one day before the 
hearing on Appellant’s motion to compel.  Appellant, in turn, filed a 
motion to quash the deposition asking the court to delay the deposition until 
after the hearing on Appellant’s motion to compel.  At the hearing, the 
parties represented to the trial court that they could reach an agreement on the 
deposition date, and the trial court admonished the parties that “[t]he 
plaintiff needs to be produced, and, of course, Kroger needs to produce whomever 
they should produce.”
        The 
next correspondence regarding Appellant’s deposition found in the record is a 
letter from Appellee dated September 5, 2002.  In that letter, Appellee 
remarked on Appellant’s failure to provide dates of availability for 
deposition and suggested seven different days in September for the 
deposition.  On the same day, Appellant sent a letter to the court with a 
copy to Appellee stating that Appellant’s counsel would be out of the office 
on vacation and for personal commitments from September 11, 2002 until October 
9, 2002.  The letter advised “all counsel of record that [Appellant’s 
attorney would] be unavailable to participate in depositions or discovery 
matters during the dates set forth above.”
        Thereafter, 
Appellee sent a notice of intent to take the oral deposition of Appellant on 
September 9, 2002.  Appellant informed Appellee that she would not be 
available, citing Appellant’s unavailability on such short notice and that the 
notice was “less than one business day in advance of the deposition.”  
Apparently, the parties ultimately reached an agreement on a date for 
Appellant’s deposition.  The record reflects that Appellee sent a letter 
to Appellant on September 9, 2002, confirming the parties’ agreement to 
conduct Appellant’s deposition on October 15, 2002 in the offices of 
Appellant’s attorney.  Despite this agreement, which Appellant made no 
objections to, Appellee filed the motion for sanctions on September 27, 2002, as 
well as a motion to compel Appellant’s deposition.  The motion to compel 
Appellant’s deposition requested the trial court to order Appellant’s 
deposition on or before October 4, 2002.  The sanctions hearing was held on 
October 7, 2002, eight days before Appellant’s scheduled deposition.
        Although 
it is obvious from the record that the parties were unable to conduct discovery 
without the court’s intervention and that Appellant’s attorney was 
uncooperative in scheduling her client for deposition, the trial court’s 
sanctions are excessive in light of the entire record.  Other, less severe 
sanctions would have satisfied the trial court’s presumed legitimate purpose 
of enforcing cooperative compliance with discovery rules, especially in light of 
the fact that the trial court ordered sanctions prior to Appellant’s 
scheduled, and agreed upon, date for deposition.  For example, the trial 
court could have ordered Appellant’s deposition for a specific date before 
imposing monetary sanctions.  Accordingly, we hold that the trial court 
abused its discretion in awarding sanctions, and we sustain Appellant’s third 
issue.
III. Conclusion
        For 
the reasons stated above, we affirm the trial court’s take-nothing judgment in 
favor of Appellee.  We reverse the trial court’s sanctions order and 
render judgment denying Appellee’s motion for sanctions.
 
 
                                                          DIXON 
W. HOLMAN
                                                          JUSTICE
  
 
PANEL 
B:   HOLMAN, GARDNER, and WALKER, JJ.
 
DELIVERED: 
June 3, 2004


NOTES
1.  
None of the letters referred to by the trial court relate to the scheduling 
conflict with the sanctions hearing.